[Civil No. 4288.   Filed November 18, 1940.]

[107 Pac. (2d) 222.]

In the Matter of JOHN C. LEE, a Member of the State Bar.

Mr. J. S. Wheeler, for State Bar of Arizona.

Mr. John W. Ray, for Respondent.

ROSS, C. J.—On March 1, 1940, R. E. Brock filed charges of unprofessional conduct against John C. Lee, a member of the bar of this state.   The substance of such charges was that in April, 1937, he employed Lee to foreclose two mortgages, the mortgagors in each being the same, one of such mortgages being for $1,300 and interest and the other for $4,591.41 and

interest; that he had an agreement with Lee to attend to the foreclosure action and to secure sheriff's deed for a fee of $150; that Lee collected and retained as his fee over $1,000.

The matter was heard by the local administrative committee of the state bar, consisting of three members, at which hearing respondent was present and was heard. The proceedings were stenographically reported and a transcription thereof is in the files. The local committee found respondent guilty of unethical conduct and recommended that he be disbarred. This recommendation and the record of the local committee were thereafter lodged, as the statute requires (sec. 35, chap. 66, Laws of 1933), with the Board of Governors of the State Bar, and this body gave respondent an opportunity to be heard. At such hearing he was present in person and represented by his attorney. The Board of Governors has filed with this court, without recommendation, all the evidence in both proceedings.

The respondent contends that there was no agreement between him and Brock as to what his fee should be, and we think the evidence sustains him in that contention. The respondent, then, in the absence of such agreement, was entitled to reasonable compensation for his services.

From the beginning we think it was apparent, to anyone familiar with the situation, that much less than the face of the two mortgages would be realized. The mortgaged property consisted of sixty acres of farming land situated in the Buckeye Irrigation District, Maricopa County, Arizona. There were several years of unpaid back taxes due; water assessments were due the irrigation district, and there was a small prior mortgage against the property.

Pending the litigation, the property was sold for a consideration of $3,000. Of this amount, as near

as we can tell from the records, respondent got $1,-521.04 and out of this amount paid court costs and other expenses in the sum of $187.22. The balance of the purchase price may be roughly accounted for as follows: $500 to $600 were laid out for taxes and water assessments and what was left went to Brock or his agents. The last payment on the purchase price was $1,166.71 and was made to respondent on November 24, 1939, through the Arizona Title Guarantee & Trust Company, with which the money to make said payment had been left with instructions to pay the same to respondent or Brock when the title company approved the title to the property. Respondent did not report such payment to Brock until January 25, 1940. The last payment was evidenced by a note of the purchaser, made payable to Brock and respondent jointly, and was secured by a mortgage on the premises. It appears from Brock's affidavit of charges that the note was made payable to him and respondent without his knowledge or authorization. There is testimony, however, showing that it was made to Lee also with Brock's knowledge and consent. When the purchaser paid the note and mortgage to the title company, the latter mailed to Brock in Batesville, Arkansas, where he resided, a satisfaction of the mortgage, or a statement that the mortgage had been paid. The letter Brock wrote respondent when he received such information does not appear in the files, but the following letter from respondent to Brock is evidently an answer thereto:

> "Phoenix, Arizona
> "January 25, 1940

"Mr. Robert E. Brock
    "Batesville, Arkansas
"Dear Bob:
    "From your recent letter I notice that you remember some things. I was surprised, however, when I

learned how much money you had taken from the land sale and what position you had left me in.

"Some of the high lights of what I remember are: First, you employed me to do a simple mortgage foreclosure, Fields was to attend to the service of summons and I to do the court work. After suit was filed I learned you had sold the land for a very low price and you asked me to get you out of that bad deal which I did and you also asked me to finance the deal which I also did. Then at the trial I settled with Van Denburg and financed that deal and later when the judgment was incorrect there came the action of correcting judgment, then the suit to quiet title against Stevens' contract which I also financed. I loaned you money on which there is a balance due of $77.00; advanced court costs in the sum of $64.55 and advanced redemption certificate money in the sum of $22.67, and considering all of the work done by me in connection with this whole litigation *the members of the bar association have fixed a reasonable fee at $1500.00.* The amount of money from the Title Company was $1143.71, the amount of money I had advanced $137.22, leaving a balance of $1006.49. (Italics ours.)

"Now, since I was required to do all the work and the financing, take all the chances, it would seem to me that you would be more than pleased if I should take the balance due in full settlement of my fee without calling on you for additional. It is not necessary to he*ar* write all of the ins and outs of this whole transaction, as you well know all the right you had to the premises was hanging by a thread.

"You were not required to make all of the trips in connection with the deal, and it is not at all necessary for you to come now. It would seem that my letter would satisfy you in that regard, however, if you are not satisfied and unhappy about the matter, I would be glad to talk to you fully in that connection.

"Very truly yours,

"JCL:el                    (Sgd)  Jno. C. Lee

"Jno C. Lee

"With the fund applied *by* books still don*t* balance on the case but in view of your position in the matter I'll call the balance OK. *If it pleases you,* I'm plan-

ning to come over and see you in your new place at Batesville, and ride a walking horse.

"Yours         Jno."

The smug, offensive and defensive attitude respondent assumed in this letter toward his erstwhile client sounds like a pronouncement by one laying a foundation for a very questionable claim, to say the least.

We have examined the record in connection with claims in letter, and it shows respondent must have devoted considerable time to the litigation and in efforts to clear the title to the land to make it merchantable, for which services we think he was entitled to a good fee. In addition to the foreclosure suit, he filed an action to quiet title to the property and prosecuted it to judgment. However, this action was partly necessary because of respondent's negligence. It seems that the judgment in the foreclosure proceeding misdescribed the property and it had to be corrected before the title company would approve the title, and this was done in the action to quiet title.

We think, however, that the charge was overexcessive. That, perhaps, could be overlooked, but respondent falsely represented that "the members of the bar association have fixed a reasonable fee at $1500.00." (See letter above.) The only semblance of truth in this statement is that he talked with two or three members of the bar about his fee and on the basis of his recital of what he had done they told him, so he says, he should have fifty per cent. of whatever was recovered. But these lawyers were not consulted as "members of the bar association" and he knew it.

This is not the only deception respondent practiced in the matter. He was paid $254.33 by the purchaser of the land on account of the purchase price, which he failed to disclose to Brock promptly, and, indeed, not until it was discovered by Brock.

Respondent's contention that he had "financed" the litigation and the clearing of title does not seem to comport with the facts. The evidence is that he was paid by Brock $100 and that he appropriated $254.33 during the time the matter was being handled, and that the money he paid out by way of expenses amounted to only $187.22.

We do not go further into details but there are other things in the record that convince us respondent did not act with entire fairness or honesty with his client. Brock was dead at the times of the hearings. He was killed in an automobile accident on or after his return home to Batesville, Arkansas, soon after filing charges against respondent, and we have not had the benefit of his side of the story. Fortunately, however, the correspondence between respondent and Brock, the admissions of respondent at the hearings and other available evidence are sufficient to allow us to do what we conceive to be just and right.

We conclude that respondent should be suspended from the practice of law in this state for a period of two years, beginning thirty days from this date, with leave at the end of such period to apply for reinstatement, which will be granted upon a proper showing that his future conduct will be in accordance with the canons of ethics.

LOCKWOOD and McALISTER, JJ., concur.